MARTEL ENTERPRISES *et al.*, Plaintiffs-Appellees, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (5th Division)   No. 1—89—0108

Opinion filed November 15, 1991.—Rehearing denied February 6, 1992.

Kelly R. Welsh, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Mardell Nereim, Assistant Corporation Counsel, of counsel), for appellant.

Michael J. Goggin, of Oak Park, for appellees.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

After a jury trial, the judge entered a directed verdict in favor of plaintiff Martel Enterprises (Martel) on its claim for conversion and the jury returned a verdict in favor of plaintiff Martin Myers on his claim for false imprisonment. Defendant, the City of Chicago (city), now appeals contending that: (1) its statutory immunity defense was applicable to Martel's conversion claim; and (2) it should have been granted judgment notwithstanding the verdict on Myers' false imprisonment claim. For the following reasons, we affirm in part, reverse in part, and remand for new trial.

Plaintiffs filed a complaint alleging that the city was liable for conversion and false imprisonment. The following testimony was presented at trial.

On June 20, 1983, several Chicago police officers executed a search warrant at Martel allowing the seizure of "Class 'C' Explosives commonly called Fireworks[:] Roman Candles, Sky Rockets, Firecrackers, etc." After opening some cartons labelled "Class C Explosives," the officers seized approximately 170 cases of fireworks including smoke balls, jumping jacks, whistling gemini, snakes, and sparklers.

Officer Joseph Carone was assigned to the gang crimes unit of the police department but participated in the search at Martel. He testified that the cartons of Class C explosives seized from Martel did not contain Roman candles, sky rockets, or firecrackers, as listed in the search warrant. Carone believed that Class C explo-

sives were illegal. He testified that a statute defined Class C explosives as any fireworks that produced an audio or visual effect, which would violate State and city laws. However, after reading the statute in question on the witness stand, he conceded that the statute did not include the term "Class C" explosive. In his opinion, the fireworks seized from Martel were illegal although he was not a specialist in that area.

Lieutenant Frank Radke was also assigned to the gang crimes unit and was present during the search. He testified that Carone examined the cartons of fireworks at Martel and told him that they were all Class C explosives. Radke testified that he believed Class C explosives violated State and city laws based on information from Officer Carone and officers from the bomb and arson unit.

Myers, the owner and president of Martel, was arrested for possession of illegal fireworks. He was taken to the police station and charged under a State law that defined "fireworks" as "any explosive composition, or any substance or combination of substances, or article prepared for the purpose of producing a visible or audible effect of a temporary exhibitional nature by explosion, combustion, deflagration or detonation." (Ill. Rev. Stat. 1981, ch. 127½, par. 127.) Myers was processed and released within an hour.

The day after the search, the bomb squad of the police department destroyed the fireworks seized from Martel. Officer James Brown, an explosives technician, explained that the fireworks were quickly destroyed under general orders of the police department which provided that if seized contraband was hazardous, it should be destroyed as soon as possible. Brown testified that when the fireworks were ignited, he heard and saw numerous audio and visual effects.

Michael Myers, vice-president of Martel, admitted that the fireworks seized by the police department would create a visual or audio effect if ignited but they would not explode.

On July 7, 1983, an assistant State's Attorney dismissed the charge against Myers with leave to reinstate and an order was entered, without a hearing, requiring the police department to return the seized fireworks to Myers.

The trial judge barred the city from presenting evidence of an ordinance allowing the police to destroy seized property which was dangerous to store (Chicago Municipal Code §2—84—170 (1990)) because Myers was charged with possession of fireworks under State law. The judge also excluded evidence of the police department's orders to destroy hazardous contraband as soon as possible.

At the close of evidence, the trial judge found that the city's defense under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (Ill. Rev. Stat. 1989, ch. 85, par. 1—101 *et seq.*) did not apply to an action for conversion. Based on a finding that the fireworks seized from Martel were legal, the judge entered a directed verdict in Martel's favor on liability for the conversion claim. The jury considered the issue of damages for the conversion and awarded Martel $16,000.

On the false imprisonment claim, the jury returned a verdict in Myers' favor, finding that the police willfully and wantonly arrested him without probable cause. The jury awarded Myers $25,000. The city's motion for judgment notwithstanding the verdict was denied.

The city now appeals.

OPINION

I

The city first argues that the trial court erred when it directed a verdict in Martel's favor on the conversion claim without applying the Tort Immunity Act. Martel does not directly respond to this argument.

■■ Under sections 2—109 and 2—202 of the Tort Immunity Act, a municipality is not liable for an injury resulting from the act or omission of its employee committed in the execution or enforcement of any law unless the act or omission was willful and wanton. (Ill. Rev. Stat. 1989, ch. 85, pars. 2—109, 2—202.) "Willful and wanton conduct" is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." Ill. Rev. Stat. 1989, ch. 85, par. 1—210.

The city argues that the Act provides immunity because it defines "injury" as "damage to or loss of property" and conversion is a tort action involving such damage. (Ill. Rev. Stat. 1989, ch. 85, par. 1—204.) The city recognizes that conversion is an intentional tort but it does not consider how the requirement of intent impacts on the application of the Act.

■■ Although conversion is considered an intentional tort because it requires "an intentional exercise of dominion or control over a chattel" (*In re Thebus* (1985), 108 Ill. 2d 255, 259, 483 N.E.2d 1258, 1260, quoting Restatement (Second) of Torts §222A (1965)), it does not require proof of malice, culpability, or conscious

wrongdoing (*Douglass v. Wones* (1983), 120 Ill. App. 3d 36, 458 N.E.2d 514). It is also not necessary to show an intent to interfere with the rights of others; however, an act which is merely negligent is not sufficient to establish conversion. Restatement (Second) of Torts §223, Comment *b*, at 436-37, §224, Comment *b*, at 437, Comment *c*, at 438 (1965).

■ The intent required to establish conversion does not necessarily fall within the definition of willful and wanton conduct in the Act. The Act defines "willful and wanton" as an intent to harm, conscious wrongdoing, or utter disregard; however, conversion does not require evidence of an intent to interfere with another's rights, malice, culpability, or conscious wrongdoing. Although evidence of negligent conduct will not support an action for conversion, it may be proven without evidence of willful and wanton conduct as defined in the Act. As a result, the city in this case may be immune from liability if the officers' conduct was not willful and wanton.

■ Additionally, under sections 2—109 and 2—203, a municipality is not liable if its employee "acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable *** except to the extent that he would have been liable had the enactment been constitutional, valid and applicable." (Ill. Rev. Stat. 1989, ch. 85, pars. 2—109, 2—203.) In this case, the city contends that the officers relied on a State law and a city ordinance defining illegal fireworks and a city ordinance allowing destruction of seized contraband that was dangerous to store. Under sections 2—109 and 2—203, the city in this case may be immune from liability if the officers relied on the enactments and acted in good faith without malice.

■ Therefore, the Tort Immunity Act was applicable to Martel's claim of conversion and the directed verdict in Martel's favor must be reversed and remanded for new trial.

■ Two other issues related to the conversion claim must be considered because they will impact on the new trial. The city contends that the trial judge improperly excluded evidence of the city ordinance which allowed the police to destroy seized property that was dangerous to store (Chicago Municipal Code §2—84—170 (1990)). On review, a ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion. (*Vaughn v. Granite City Steel Division of National Steel Corp.* (1991), 217 Ill. App. 3d 46, 576 N.E.2d 874.) The ordinance should have been considered because it was relevant to whether the officers were executing or enforcing a law at the time they destroyed the fireworks and whether

they relied on the ordinance in good faith and without malice. The exclusion of this evidence was an abuse of discretion.

■ The city also contends Martel was required to establish that the fireworks were legal as element of conversion. In an action for conversion, plaintiff must prove: (1) defendant assumed unauthorized and wrongful control or ownership over the personalty of plaintiff; (2) plaintiff's right in the property; (3) the right to immediate possession of the property; and (4) a demand for possession. (*Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, 512 N.E.2d 1027.) The city relies on *People v. Fratto* (1961), 32 Ill. App. 2d 354, 177 N.E.2d 864, which stated that the law will not recognize an ownership right to contraband. However, *Fratto*, a criminal case, did not consider whether a plaintiff in a civil action for conversion must prove that the property involved was legal, as the city argues. The elements of a conversion action, as stated above, do not require such proof.

## II

Concerning Myers' false imprisonment claim, the city argues that it should have been granted judgment notwithstanding the verdict because the evidence showed the officers had probable cause to arrest Myers for possession of illegal fireworks. It relies on evidence that the officers had a valid search warrant and the fireworks seized from Martel violated State and city laws. Myers responds that the evidence did not support a finding of probable cause because, although the officers had a search warrant, they did not have an arrest warrant and the fireworks were legal.

■ In an action for false imprisonment, a plaintiff must show that the restraint was unreasonable or without probable cause. (*Hajawii v. Venture Stores, Inc.* (1984), 125 Ill. App. 3d 22, 465 N.E.2d 573.) Probable cause is an absolute bar to a claim of false imprisonment. *Fulk v. Roberts* (1987), 164 Ill. App. 3d 194, 517 N.E.2d 1098.

Judgment notwithstanding the verdict should only be entered when all of the evidence, viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that a contrary verdict based on that evidence could not stand. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223.) In ruling on the motion, the trial judge may not substitute his judgment for that of the jury as to the credibility of witnesses and he may not determine the preponderance of the evidence. (*In re Village of Bridgeview* (1985), 139 Ill. App. 3d 744, 487 N.E.2d 1109.) If the evidence demonstrates a

substantial factual dispute or if the outcome is dependent on the assessment of the witnesses' credibility or the resolution of conflicting evidence, judgment notwithstanding the verdict should not be entered. *Lee v. Grand Trunk Western R.R. Co.* (1986), 143 Ill. App. 3d 500, 492 N.E.2d 1364.

In this case, the officers had a warrant to search Martel for Class C explosives, listed as Roman candles, sky rockets, and firecrackers. The officers found cartons labelled "Class C Explosives," which contained various types of fireworks but not the types listed in the warrant. The officers testified that they seized the cartons believing that all Class C explosives violated State and city laws although they did not normally work in that area. Myers was arrested, without a warrant, for possession of illegal fireworks.

▆ This evidence must be viewed in a light most favorable to Myers. Although the fireworks seized from Martel were not the same type of fireworks listed in the search warrant, they were seized and Myers was arrested based on Officer Carone's and Lieutenant Radke's belief that they violated State and city laws. However, their testimony showed that their knowledge in the area was limited. Carone's testimony that Class C explosives were defined as illegal in the statute was inaccurate and Radke relied on Carone's information. Radke also relied on officers from the bomb and arson unit but those officers did not testify at trial. This evidence did not overwhelmingly favor a finding of probable cause to arrest Myers. The determination of whether the officers had probable cause was dependent on an assessment of Carone's and Radke's credibility, which was for the jury to resolve. If the jury believed them, it would have found they had probable cause; however, based on its verdict, it is apparent that the jury discredited their testimony. It would have been improper for the trial judge to assess the credibility of the witnesses in ruling on a motion for judgment notwithstanding the verdict. Although a different conclusion may have been reasonable, neither the trial judge nor this court may substitute its judgment for that of the jury. As a result, the denial of the city's motion for judgment notwithstanding the verdict was proper.

The city also argues that the the trial judge improperly instructed the jury on false imprisonment.

▆ ▆ A judgment will not be reversed on appeal for an error in jury instructions unless the instructions clearly misled the jury and the appellant was prejudiced. (*Villa v. Crown Cork & Seal Co.* (1990), 202 Ill. App. 3d 1082, 560 N.E.2d 969.) In this case, the city offered an instruction which stated that Myers claimed he was un-

lawfully arrested "without probable cause and not in good faith" and that the city alleged "there was probable cause to arrest [Myers] and that it acted reasonably and in good faith." The trial judge deleted the references to good faith and gave the instruction to the jury. The city argues that the references to good faith should not have been deleted, relying on *Riley v. Fairfield* (1987), 160 Ill. App. 3d 397, 513 N.E.2d 618. In *Riley*, the court found that police officers with a valid arrest warrant who mistakenly arrested a person were immune from liability for false imprisonment if they acted in good faith. However, *Riley* did not consider the sufficiency of jury instructions for false imprisonment and does not support the city's argument that it was reversible error to exclude the reference to good faith in the instruction. The city did not establish that it was substantially prejudiced from the instruction.

▆▆ The city also argues that the jury's verdict on the false imprisonment claim should be overturned because it was influenced by the trial judge's finding, when he entered a directed verdict against the city on the conversion claim, that the fireworks were legal. The city failed to cite authority to support this argument. An appellate court need not address an issue which is not supported with authority and, as a result, the issue is waived. 134 Ill. 2d R. 341(e)(7); *Board of Regents for Regency Universities v. Human Rights Comm'n* (1990), 196 Ill. App. 3d 187, 552 N.E.2d 1373.

In conclusion, the directed verdict against the city on the conversion claim is reversed and remanded for a new trial, and the jury's verdict against the city on the false imprisonment claim is affirmed.

Affirmed in part; reversed in part; and remanded for new trial.

MURRAY and GORDON, JJ., concur.